Filed 9/20/13  P. v. Green CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B245229 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA079912) |
| v. | |
| SHAUN GREEN, | |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Los Angeles County.  James R. Dabney, Judge.  Affirmed.

John Allen Cohan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Scott A. Taryle, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found Shaun Green guilty of one count of receiving stolen property, Penal Code section 496, subdivision (a). His appeal raises two issues: (1) the trial court's admission into evidence of certain telephone text messages; and (2) the trial court's denial of a midtrial continuance in response to the prosecution's untimely disclosure of a witness's pretrial failure to identify the defendant in a police photographic lineup. We find that neither contention has merit, and affirm the conviction.

## BACKGROUND

An audio-visual rental firm had shipped a Canon photographic lens, valued at about $16,000, from its office in Atlanta, Georgia to its office in Glendale, California. The lens and the case in which it had been shipped was missing from the Delta Airlines cargo shipment, and was reported stolen in September 2011.

In January 2012, George Feucht, a professional director of photography who had been searching on eBay for a broadcast-quality photographic lens, contacted the seller of the Canon lens involved in this case, using the eBay message system's identification for the seller, "SGRE9919." After corresponding with the seller at some length through the eBay message system, Feucht arranged to purchase the lens for a little more than $9,000, paying through PayPal. The seller offered a full refund within three days if Feucht found anything wrong with the lens.

Feucht arranged with the seller to take delivery of the lens at a local Starbuck's coffee shop near the USC campus, from someone identified as the seller's intern. Feucht met a man at the appointed spot, and received the lens.

After Feucht had an opportunity to test the lens on a camera, he found that it had some defects. Using the seller's eBay identification he brought the defects to the seller's attention a few days later, hoping to obtain the seller's agreement to contribute some reasonable portion of the cost of needed repairs. The seller instead replied that the lens Feucht had intended to purchase had mistakenly been shipped overseas, and promised to refund $1,000 of the purchase price.

2

Feucht was contacted soon after that exchange by a detective from the Los Angeles Police Department airport police, who told him that the lens might be stolen. The police took the lens from Feucht. Although he never received the promised $1,000 refund from the seller, Feucht was able to obtain a complete refund of the lens's purchase price through the eBay buyer protection plan.

Feucht testified on direct examination at trial that appellant looked familiar to him, "but I cannot say with 100 percent certainty that that was the person that I met" at the coffee shop. On cross-examination Feucht testified that his contact with the person who had delivered the lens had been minimal, the location had been dark, and he had been unable to tell the police whether the person from whom he had received the lens was or was not depicted in the photos he had been shown.

Belinda Joseph, a detective with the Los Angeles airport police, testified that she had shown Feucht two photo six packs in connection with her investigation, which included photos of appellant and Trammel Nelson, another suspect. Feucht had not identified any of the photos.

Joseph and other officers had obtained search warrants for the homes and vehicles of appellant, of Nelson (an airport cargo ramp employee), and of a third suspect. From Nelson's garage they seized approximately 300 items of photographic equipment, about $100,000 in cash, and Nelson's cell phone. In appellant's home and car they found no evidence.

Appellant was arrested and charged with receiving stolen property, a Canon camera lens, knowing it had been stolen, Penal Code section 496, subdivision (a). After appellant was advised of his *Miranda* rights, he told the police that he knew that items— particularly high-end camera equipment—were being stolen from LAX by Nelson, and that he had listed and sold some of the items for Nelson on eBay using the name Mike Anderson, and had shared the profits with Nelson. He said that Nelson had met someone at Starbucks, near the USC campus, in connection with the sale of a stolen lens he had listed on eBay. Appellant also provided the police with a handwritten statement denying that he had stolen anything at the airport, but stating that he had listed stolen items on

3

eBay and had received payment for them in his PayPal account, which he had transferred to Nelson's account.

Over appellant's objections (discussed below), Detective Joseph identified 13 pages of text messages transcribed from Nelson's cell phone (pursuant to a separate warrant), made to and from a contact identified as "Shaun2ndcell." A number of the text messages contained discussions about the sale of the lens to Feucht on eBay, and one message referred to, and forwarded to Nelson's phone, a photo of the lens (purporting to show damage) that Shaun2ndcell had received from Feucht after the sale.

Appellant presented no testimony. The parties made their closing statements, and the court instructed the jury. After deliberating one and one-half hours, the jury found appellant guilty as charged.

## DISCUSSION

1. **The Trial Court Properly Admitted Evidence of Text Messages on Nelson's Cell Phone**

Appellant challenges the admission into evidence of Exhibit 9, the transcription of text messages between Nelson's cell phone and the contact identified as Shaun2ndcell. He argues that there was no foundation to show that the exhibit accurately reproduced the messages on Nelson's phone, that no reliable evidence linked appellant to the messages, and that the jury was prejudicially permitted to consider the messages for the truth of their contents.[1] We do not agree.

The text messages transcribed in Exhibit 9 were sufficiently authenticated. Although a writing must be authenticated before it is received into evidence or before secondary evidence of its contents may be received (Evid. Code, § 1401), a document is authenticated when sufficient evidence is produced to sustain a finding that the document is what it purports to be. (Evid. Code, § 1400.) Detective Joseph testified that she seized

---

[1] At trial appellant had objected to the transcription of text messages between Nelson's cell phone and Shaun2ndcell on grounds of lack of foundation, lack of authentication, undue prejudice under Evidence Code section 352, and as a violation of his federal constitutional right to confront and cross-examine Nelson.

4

Nelson's phone pursuant to the warrant authorizing the search of his home and car, and that she examined the messages on it pursuant to a search warrant she thereafter obtained for that purpose. She testified that Exhibit 9 was a transcription of text messages she had found on Nelson's phone in those searches. Her testimony was sufficient to sustain a finding that Exhibit 9 is what the People claimed it to be—a transcription of the contents of messages to and from the person that Nelson's phone designated as "Shaun2ndcell."

It is true that no direct evidence identified appellant as that person, Shaun2ndcell.[2] However, direct evidence was not required. At trial, the court accurately identified the authentication issue as one of relevance. Unless the messages had been sent or received by appellant, they would not be relevant to establish any fact in issue. And while appellant was entitled to argue to the jury that he was not the contact designated as Shaun2ndcell, the evidence was sufficient to support the inference that the messages on Nelson's phone to and from Shaun2ndcell were exchanged between Nelson and appellant.

As the trial court correctly found, the text messages tended to corroborate appellant's custodial statement to the police about his role in the sale of the lens through eBay. The People had presented evidence that appellant had told them (in part orally and in part in writing) that he knew that Nelson had stolen high-end camera equipment from LAX; that he had an eBay account under the name of Mike Anderson that he used to list stolen items for sale on behalf of Nelson; that he had received payment for the items into his PayPal account and had shared profits of the sales with Nelson; and that Nelson had met someone at Starbucks, near the USC campus, in connection with the sale of a stolen lens he had listed on eBay. In addition to this evidence, trial Exhibit 8 contained documents produced by eBay, apparently showing the existence of an eBay account with a user name of "SGRE9919" (appellant's first initial and the first three letters of his last name), the account with which Feucht had exchanged communications in purchasing the stolen lens, with an associated email address of "shaung310@aol.com (containing

_____

[2] Apparently no evidence showed that the telephone number to and from which the messages were sent was for a telephone belonging to appellant.

5

appellant's first name and the first letter of his last name), and contact information for "shaun green" at a listed street address.[3]

Appellant concedes in his brief in this court that the SGRE9919 user name was identified in Exhibit 8 as belonging to "Mike Anderson"—the name that appellant admitted to the police he had used for eBay listings. The text messages from Shaun2ndcell in Exhibit 9 also referenced the sale of the lens to Feucht and the photo that Feucht had sent him, which could have been sent only by the lens's seller, admittedly appellant. The message stated: "Did you see the bullshit message on eBay that the dude, George Feucht, put about the lens? It's past three days, but actually took pictures that looks like he created himself. . . ." The text messages therefore corroborated appellant's statements to the police that he knew Nelson, that he used his eBay account to sell items for Nelson, and that he sold the stolen lens he had received from Nelson to Feucht. A document's contents may be used to authenticate the document. (Evid. Code, § 1421.)

In the closing argument to the jury, appellant's counsel conceded the strength of the evidence that it was appellant who had sold the stolen lens on eBay using the SGRE9919 account. She explained to the jury that the direct evidence showed that the lens was stolen, and that it was sold on eBay, and that there was strong circumstantial evidence that it was appellant who had sold the lens.

The missing proof, appellant's counsel argued to the jury, was not proof that appellant had sold a stolen lens on eBay; that fact she essentially conceded. "There are lots of things that we don't know about this case. What we do know is that the eBay

---

[3] No trial exhibits have been included in the clerk's transcript or transmitted to this court in connection with this appeal. (See Rule 8.224, Cal. Rules of Court.) However the undisputed contents of Exhibits 8 and 9 are apparent from the testimony of witnesses, reported conferences between the trial court and counsel, representations and arguments of trial counsel to which no objections or disagreement were interposed in the trial court, and concessions in the parties' briefs on appeal. We therefore find it unnecessary to direct transmittal of exhibits to this court. (Rule 8.224(d), Cal. Rules of Court.) In the absence of these exhibits, of course, we do not presume that anything in them would undermine the judgment. (*Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 291.)

6

records seem to indicate that Mr. Green is selling items on eBay," one of which was shown to have been stolen. It is "a piece of circumstantial evidence that SGRE9919 belongs to this gentleman," and conceded that "probably the only reasonable inference is that, yes, it does belong to this gentleman. It has his address, it has everything else [except the computer that sent the messages]."

The missing evidence, she argued, was evidence that appellant sold the lens *with knowledge* that the lens was stolen—an essential element of the crime of receiving stolen property. "There's zero evidence that any items that Mr. Green sold on eBay, other than that one camera lens [and perhaps one other item], was stolen." And there was no evidence at all, she argued to the jury, that appellant knew that the lens he had sold on eBay was stolen.[4]

On this record we conclude that the evidence before the trial court was amply sufficient to support an inference by the jury that appellant was the contact identified on Nelson's phone as Shaun2ndcell, and that the messages transcribed in Exhibit 8 were exchanged between Nelson and appellant. That inference justified the trial court's admission of the exhibit into evidence. "'[T]he fact that the judge permits [a] writing to be admitted in evidence does not necessarily establish the authenticity of the writing; all that the judge has determined is that there has been a sufficient showing of the authenticity of the writing to permit the trier of fact to find that it is authentic.' [Citation.]" (*People v. Valdez* (2011) 201 Cal.App.4th 1429, 1434-1435.) The fact that conflicting inferences might arise from circumstantial evidence showing authentication

---

[4] Appellant's appeal does not challenge the sufficiency of the evidence to support the jury's implicit determination that he knew the lens was stolen.

7

goes to the weight of the document as evidence, not to its admissibility. (*Id.* at p. 1435.) The trial court did not err in admitting the text message transcription into evidence.[5]

## 2. The Trial Court Did Not Abuse Its Discretion by Denying Appellant's Request for a Continuance as a Sanction for the Prosecution's Discovery Violation

Following the prosecution's direct examination of Feucht—and Feucht's uncertain identification of appellant as perhaps the person who had delivered the lens to him in the coffee shop near USC—the prosecution presented appellant's counsel with the photographic lineups that Feucht had been shown by the police, from which Feucht had been unable to identify either appellant or Nelson. Appellant's counsel charged that the untimely production of that evidence to the defense was a discovery violation (a charge that the prosecution did not deny).

Appellant's trial counsel promptly moved for a mistrial based on the prosecution's failure to produce the evidence earlier. "[I]t's Mr. Green's right to effectively cross-examine and confront the witnesses. That was denied by the fact that there was outstanding discovery on this exact issue on the I.D. that was not turned over." The court denied the motion, ruling that because Feucht remained on the stand, appellant had not been deprived of his opportunity to confront and cross-examine Feucht and he therefore

---

[5] Appellant argues also that the trial court erred by allowing the jury to consider the text messages for the truth of their contents. However, at trial his counsel did not interpose any hearsay objection to the text messages, and sought no limiting instruction. (Evid. Code, § 353, subd. (a); *People v. Montiel* (1993) 5 Cal.4th 877, 918 [failure to request limiting instructions regarding hearsay evidence waives any error on appeal].) In any event, appellant has failed to identify any specific text message that he contends might have been considered for its truth, or to demonstrate how he was prejudiced. Without that, we cannot assume either that error occurred or that it is reasonably probable that an outcome more favorable to appellant would have resulted had limiting instructions been given. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

was not prejudiced by the late discovery. "So I don't believe that your client is prejudiced by the late discovery because it, in fact, helps you."[6]

In the alternative, appellant's trial counsel asked that the trial be continued, both to enable her to obtain any written report regarding admonitions given to Feucht in connection with the photographic lineups, and in order to obtain an eyewitness identification expert in light of the suggestive nature of Feucht's in-court identification of the appellant. That, too, the trial court denied, for lack of any denial that Feucht had been unable to identify anyone to the police, and any evidence that the police had withheld any written report. If neither Feucht nor anyone else was denying that he had been unable to identify anyone to the police, "then I don't see why we need to delay the cross-examination."[7]

Feucht was then cross-examined about his inability to identify either appellant or Nelson from the photographs the police had shown him. The two six-pack photographic lineups were admitted into evidence as defense exhibits.

In its closing argument to the jury, the prosecutor told the jury that he was not relying on any identification of appellant as the person who delivered the lens to Feucht, because that evidence "doesn't matter." He explained that appellant was guilty of the crime of receiving stolen property solely because he had aided Nelson in selling the property, knowing it was stolen, even if he had never touched the lens. He invited the jury to totally disregard Feucht's courtroom identification of appellant as possibly being the person who made the coffee shop delivery of the lens. "That was an equivocal I.D.," he told the jury, and "I wouldn't put a lot of stock in it." "This is what I suggest you do with that. You take it, and you throw it mentally in the trash." "If . . . you want to draw

---

[6] The trial court made it clear that appellant would have an opportunity to address the reasons for the prosecution's failure to provide timely discovery at a later time.

[7] The court told appellant's counsel that she was free to present eyewitness-identification expert testimony if she obtained an expert witness within a day or two, but questioned why she would want to do so in light of Feucht's "very equivocal I.D." of appellant at trial.

any inference [from the identification evidence], draw the inference that Mr. Feucht was mistaken, draw it completely against the People."

The court instructed the jury that the People had violated its obligations by failing to disclose the copies of the photographic lineups and the transcription of eBay messages within the time required by law. It instructed that in evaluating the weight and significance of that evidence, the jury was entitled to consider any effect those late disclosures might have had (as appellant's counsel had argued to the jury it should do). The jury was also instructed that in evaluating the identification testimony, it should consider factors such as the witness's ability to observe, the certainty of the witness's identification, and whether the witness had failed to identify the defendant in a photographic lineup.

Appellant does not appeal from the denial of the motion for mistrial, but only from the denial of the motion for a continuance.

Trial courts have broad discretion to fashion appropriate remedies for discovery violations. (Pen. Code, § 1054.5; *People v. Ayala* (2000) 23 Cal.4th 225, 299.) Appellant argues on appeal that the trial court should have granted the continuance request in order to enable his counsel "to have time to obtain an expert to testify as to the implications of a witness' failure to identify a suspect." He argues that the trial court abused its discretion by refusing that minimally intrusive sanction for the "material discovery breach" represented by the late disclosure of Feucht's inability to identify appellant and Nelson to the police.

"The granting or denial of a motion for a continuance in the midst of a trial traditionally rests within the sound discretion of the trial judge who must consider [various factors including] whether substantial justice will be accomplished or defeated by a granting of the motion. In the lack of a showing of an abuse of discretion or of prejudice to the defendant, a denial of his motion for a continuance cannot result in a reversal of a judgment of conviction." (*People v. Laursen* (1972) 8 Cal.3d 192, 204; *People v. Zapien* (1993) 4 Cal.4th 929, 972.)

The record reveals no abuse of discretion in the trial court's denial of a continuance, and no resulting prejudice to appellant. The requested continuance was purportedly needed in order to obtain any written admonitions given to Feucht and any resulting written police reports, and to obtain the testimony of an expert witness in eyewitness identifications. But there apparently were no written admonitions or police reports, as far as the record shows. Nor has appellant suggested how an expert in eyewitness identification might have assisted either appellant or the jury. Feucht testified on direct examination that it was dark at the coffee shop, that his meeting with whomever had delivered the lens had been brief, and that he was uncertain whether it had been appellant who had delivered the lens to him. The prosecution had wholly disclaimed any reliance on that equivocal identification explaining to the jury—correctly, and without objection on appellant's behalf—that appellant was guilty of the charged offense whether it was or was not appellant that Feucht had met at the coffee shop.[8]

An expert on eyewitness identification could hardly have told the jury more than what the prosecution itself argued: that it should disregard Feucht's equivocal in-court identification of appellant. Nothing suggests that any evidence more helpful than that could have been obtained from an expert on eyewitness identifications. Nothing in the record indicates a reasonable probability that a continuance of the trial would have had resulted in an outcome more favorable to appellant. (*People v. Zapien*, *supra*, 4 Cal.4th at p. 972 [applying abuse of discretion standard to claimed error in denial of continuance].)

For this reason, it is clear that the People's delay in disclosing Feucht's pretrial failure to identify appellant from the photographs shown to him did not violate appellant's federal constitutional due process rights under *Brady v. Maryland* (1963) 373 U.S. 83. A prosecutor's late disclosure of evidence, either intentional or inadvertent,

---

[8] The evidence included appellant's statement to the police that Nelson, not appellant, had delivered the lens to the buyer, and, according to appellant's trial counsel, certain of the text messages in Exhibit 9 indicated that yet another person might have been the one who delivered the phone to Feucht.

does not constitute a *Brady* violation unless the evidence "'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" (*Strickler v. Greene* (1999) 527 U.S. 263, 290.) "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." (*United States v. Coppa* (2d Cir. 2001) 267 F.3d 132, 144.)

As the Supreme Court has held, "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different result." (*Strickler v. Greene*, *supra*, 527 U.S. at p. 281.) The record here discloses no such reasonable possibility.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


ROTHSCHILD, Acting P. J.


JOHNSON, J.


12